UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL COLEMAN, on behalf of himself and others similarly situated, | **Case No.: 17-119** |
| Plaintiff, | **Class Action** |
| | **Demand for Jury Trial** |
| vs. | |
| EXXON MOBIL CORPORATION, REEVES BOOMLAND, INC., and BI-STATE SOUTHERN OIL COMPANY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Michael Coleman ("Plaintiff"), by and through the undersigned counsel, sues Exxon Mobil Corporation ("Exxon"), Reeves Boomland, Inc. ("Reeves"), and Bi-State Southern Oil Company ("Southern") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.       Congress passed the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §1681, *et. seq*., in 2003 in an effort to protect consumers from the perils of identity theft.

2.       "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it." *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014).

3.        Relevant here, the FACTA prohibits businesses that accept payment via credit or debit card from including more than the last five digits of a credit or debit card number on electronically printed receipts provided to consumers at the point of sale.

4.       If followed, the FACTA deters identify theft by reducing an identity thief's access to and ability to obtain a consumer's valuable account information. *See, e.g.*, Pub. L. 110–241, §

2(a)(6), 122 Stat. 1565, 1565 (2007) (stating that "[e]xperts in the field agree that proper truncation of the card number . . . . prevents a potential fraudster from perpetrating identity theft or credit card fraud."); *Redman*, 768 F.3d at 626 (". . . the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases that the seller will think were made by the legitimate cardholder.").

5.      Upon signing the FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

6.      The Federal Trade Commission noted in a 2007 bulletin that "[c]redit card numbers on sales receipts are a 'golden ticket' for fraudsters and identity thieves."[1]

7.      Plaintiff brings the following claim, individually and on behalf of others similarly situated, to remedy Defendants' continuing, willful, and flagrant violations of the FACTA.

8.      As described more fully below, Defendants willfully and improperly include more than five digits of credit card and debit card numbers on electronically printed receipts they provide to consumers who use an ExxonMobil Speedpass to enter into a credit card or debit card transaction with Defendants.

9.      This practice subjects Plaintiff, and other similarly situated consumers, to an increased risk of identity theft and deprives them of the intended benefits of the FACTA.

---

[1]      *See* https://www.ftc.gov/tips-advice/business-center/guidance/slip-showing-federal-law-requires-all-businesses-truncate (last accessed July 10, 2017).

**JURISDICTION**

10.     This Court has jurisdiction over this action pursuant to the FACTA, which provides that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy . . .." 15 U.S.C. § 1681(p).

11.     This Court also has jurisdiction under 28 U.S.C. § 1331 and § 1332.

12.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's action occurred in this State and this District, and as Reeves and Southern have their principal places of business in this State and this District.

**PARTIES**

13.     Plaintiff is a natural person who at all relevant times resided in Cairo, Illinois.

14.     Exxon is a publicly-traded oil and gas company headquartered in Irving, Texas.

15.     Reeves is a privately-owned company that owns and operates three convenience stores in Missouri that offer, among other things, Exxon-branded gasoline.

16.     Southern is a privately-owned company that owns and operates two convenience stores in Missouri that offer, among other things, Exxon-branded gasoline.

**EXXON'S RELATIONSHIP TO REEVES AND SOUTHERN**

17.     Reeves and Southern both operate Exxon-branded gas stations on their properties through, upon information and belief, agreements with Exxon that set forth specific terms and conditions for the use of the Exxon logo and sale of Exxon products.

18.     These agreements are in the possession of Defendants.

19.     Upon information and belief, pursuant to these agreements, Exxon exercises control over Reeves and Southern in their use of the Exxon logo and sale of Exxon products, including the point of sale terminals utilized at the companies' gas pumps.

20.     Specifically, Reeves and Southern offer customers the opportunity to pay for gasoline at the pump using Exxon's Speedpass.

21.     Speedpass is a contactless payment option that allows a customer to link a credit card or debit card electronically to a keychain device.

22.     The customer then merely must waive the Speedpass at the sensor on the gas pump to initiate a charge to the credit card or debit card on file.

23.     The process uses a radio frequency identification device that is read by a tag reader inside the gas pump.

24.     The consumer's purchase is then charged to a credit card or debit card linked to the consumer's Speedpass account.

25.     The Speedpass can be linked to ExxonMobil Smart Cards, MasterCard, Visa, American Express, or Discover credit cards, as well as MasterCard, Visa, or Discover debit cards, among other cards.

26.     Upon information and belief, Speedpass is solely the property of Exxon and is owned and controlled by Exxon.

**THE FACTA WAS WIDELY PUBLICIZED**

27.      After enactment of the FACTA in 2003, Congress provided businesses three years within which to comply with the FACTA's requirements, mandating full compliance with its provisions no later than December 4, 2006.

28.     And then, because many large retailers still had not complied with the FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007, which provided amnesty for certain past violators up to June 3, 2008.

29.     The FACTA truncation requirements were widely publicized among retailers.

30.     For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . ."[2]

31.     In May 2007, the Federal Trade Commission published a bulletin titled "Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," noting that:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten—or truncate—the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date.[3]

32.     In 2010, Visa issued a Best Practice alert that stated:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.[4]

---

[2]     *See* http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (last accessed July 10, 2017).

[3]     *See* https://www.ftc.gov/tips-advice/business-center/guidance/slip-showing-federal-law-requires-all-businesses-truncate (last accessed July 10, 2017).

[4]     *See* https://usa.visa.com/dam/VCOM/global/support-legal/documents/bulletin-pan-truncation-best-practices.pdf (last accessed July 10, 2017).

## FACTUAL ALLEGATIONS

33.     On May 15, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $25.38 worth of gasoline.

34.     After processing Plaintiff's credit card—linked to Plaintiff's Speedpass account—Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "May 15 Receipt").

35.     The May 15 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

36.     On May 20, 2017, Plaintiff again visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $10.00 worth of gasoline.

37.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "May 20 Receipt").

38.     The May 20 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

39.     On June 6, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $32.72 worth of gasoline.

40.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "June 6 Receipt").

41.     The June 6 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

42.     On June 12, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $29.21 worth of gasoline.

43.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "June 12 Receipt").

44.     The June 12 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

45.     On June 21, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $32.46 worth of gasoline.

46.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "June 21 Receipt").

47.     The June 21 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

48.     On June 26, 2017, Plaintiff visited Southern's location at 612 South Spriggs Street, Cape Girardeau, Missouri 63701, and used his Speedpass to purchase $19.87 worth of gasoline.

49.     After processing Plaintiff's credit card, Southern and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "June 26 Receipt").

50.     The June 26 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

51.     On July 4, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $32.41 worth of gasoline.

52.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "July 4 Receipt").

53.     The July 4 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

54.     On July 7, 2017, Plaintiff visited Reeves's location at 100 Beasley Park Road, Charleston, Missouri 63834, and used his Speedpass to purchase $18.28 worth of gasoline.

55.     After processing Plaintiff's credit card, Reeves and Exxon provided Plaintiff with an electronically printed receipt evidencing the sale (the "July 7 Receipt").

56.     The July 7 Receipt includes the first six digits, and the last four digits, of Plaintiff's credit card number, in clear violation of the FACTA.

57.     Plaintiff frequents Reeves and Southern for gas because they are the closest locations to his home.

58.     On occasion, after purchasing gas at one of these locations using his Speedpass, Plaintiff believes he has forgotten to pull his receipt out of the machine, leaving it hanging in public view.

59.     At other times, after purchasing gas at one of these locations using his Speedpass, Plaintiff believes he has thrown his receipt in the trash next to the pump.

60.     Exxon markets the Speedpass as "worry-free technology" because "[c]ard numbers or other personal information are not stored on the Speedpass device, so [the user's] information is protected from unauthorized access."[5]

61.     Exxon further assures customers that their "Speedpass device utilizes a dedicated transponder identification and security code making it more secure than a magnetic-stripe credit/debit card."[6]

62.     As a result, consumers who make purchases using Speedpass do so with the expectation that that Exxon will secure their data and protect their personal information.

---

[5]     *See* https://www.speedpass.com/how-speedpass-works (last accessed June 27, 2017).

[6]     *See* https://www.speedpass.com/faq (last accessed June 27, 2017).

63.     Given the foregoing, Defendants' practices created a real risk of harm that Plaintiff's identity would be stolen, or that his private financial information would otherwise be compromised—the exact harm that Congress was attempting to prevent when enacting the FACTA.

64.     At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and employees, was willful, reckless, and exhibited a grossly negligent disregard for federal laws and Plaintiff's related rights.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of himself and a class (the "Class") of similarly situated individuals as defined below:

### The Class

All persons in the United States (1) who, when making payment using an Exxon Speedpass linked to a credit or debit card (2) were provided with a point of sale receipt, (3) which displayed more than five digits of the credit card or debit card number, (4) from two years prior to the filing of this complaint through the date of class certification.

### The Subclass

All persons in the United States (1) who, when making payment using an Exxon Speedpass linked to a credit or debit card at a Reeves or Southern location (2) were provided with a point of sale receipt, (3) which displayed more than five digits of the credit card or debit card number, (4) from two years prior to the filing of this complaint through the date of class certification.

Excluded from the Class and Subclass are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

66.     The proposed Class and Subclass are each so numerous that joinder of all members is impracticable.

67.     The exact number of members of the Class and Subclass is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

68.     The members of the Class and Subclass are ascertainable because the Class and Subclass is defined by reference to objective criteria.

69.     The proposed Class and Subclass is identifiable in that the names of persons who paid using a Speedpass and received a receipt containing more than five digits of their credit card or debit card number can be identified in business records maintained by Defendants and third parties.

70.     Plaintiff's claims are typical of the claims of the members of the Class and Subclass because Plaintiff and all of the Class and Subclass members' claims originate from the same conduct, practice and procedure on the part of Defendants and Plaintiff possesses the same interests and has suffered the same injuries as each Class and Subclass member.

71.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass and has retained counsel experienced and competent in class action litigation.

72.     Plaintiff has no interests that are contrary to or in conflict with the members of the Class and Subclass that he seeks to represent.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

74.     Furthermore, as the damages suffered by individual members of the Class and Subclass may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.

75.     There will be little difficulty in the management of this action as a class action.

76.     Issues of law and fact common to the members of the Class and Subclass predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the entire Class and Subclass.

77.     Among the issues of law and fact common to the Class and Subclass are:

    a.   whether Defendants accepted payment by credit or debit card from any consumer and subsequently gave that consumer an electronically printed receipt which contained more than five digits of that consumer's credit card or debit card number;

    b.   whether Defendants' conduct was willful;

    c.   the availability of statutory damages; and

    d.   whether Defendant should be enjoined from engaging in such conduct in the future.

78.    Absent a class action, Defendants' violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## COUNT I: VIOLATIONS OF 15 U.S.C. §1681c(g)(1)

79.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 – 78.

80.    15 U.S.C. §1681c(g)(1) provides in pertinent part:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

81.    This section applies to any "device that electronically prints receipts" for point of sale transactions. 15 U.S.C. §1681c(g)(3).

82.    Southern and Reeves—at the direction and control of Exxon—employ the use of these devices for point of sale transactions at their various locations referenced above.

83.    Plaintiff was provided receipts by Defendants that included more than five digits of his credit card number at the point of sale.

84.    By printing more than five digits of Plaintiff's credit card number on Plaintiff's transaction receipts, Defendants caused Plaintiff to suffer a heightened risk of identity theft, and

potentially exposed Plaintiff's private information to third parties who may have come into contact with those receipts.

85.     At all relevant times, Defendants were aware, or should have been aware, of the FACTA, including the requirement to truncate credit card and debit card numbers on electronically printed receipts.

86.     Upon information and belief, Defendants knew, or should have known, that they were printing more than five digits of credit card numbers on transaction receipts.

87.     As a result, Defendants willfully violated 15 U.S.C. §1681c(g)(1).

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action and designating Plaintiff as class representative of the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Adjudging that Defendants violated 15 U.S.C. §1681c(g)(1) and that Defendants did so knowingly and willingly, and enjoining Defendants from further violations of 15 U.S.C. §1681c(g)(1) with respect to Plaintiff and the other members of the Class and Subclass;

(c)     Awarding Plaintiff and members of the Class and Subclass statutory damages pursuant to 15 U.S.C. § 1681n in an amount up to $1,000.00 per violation;

(d)     Awarding Plaintiff and members of the Class and Subclass punitive damages pursuant to 15 U.S.C. § 1681n;

(e)     Awarding Plaintiff and members of the Class and Subclass their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to pursuant to 15 U.S.C. § 1681n and Rule 23 of the Federal Rules of Civil Procedure; and

(f)     Awarding other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  July 26, 2017                          Respectfully submitted,


                                               */s/Anthony LaCroix*
                                               Anthony LaCroix
                                               LaCroix Law Firm, LLC
                                               406 W 34th St #810,
                                               Kansas City, MO 64111
                                               Telephone:  816.399.4380
                                               Tony@lacroixlawkc.com

                                               James L. Davidson*
                                               GREENWALD DAVIDSON PLLC
                                               5550 Glades Road, Suite 500
                                               Boca Raton, FL 33431
                                               Telephone:  561.826.5477
                                               Fax:     561.961.5684
                                               jdavidson@gdrlawfirm.com

                                               Counsel for Plaintiff and the proposed Class

                                               * to seek admission *pro hac vice*